**GREESON et al. v. IMPERIAL IRRIGATION DIST. et al.**

District Court, S. D. California, S. D.
Dec. 5, 1931.

E. R. Simon, of Los Angeles, Cal., for plaintiffs.

Chas. L. Childers and D. B. Roberts, both of El Centro, Cal., for certain defendants.

McCORMICK, District Judge.

Two owners of land within the present boundaries of the Imperial Irrigation District in California bring this suit in equity for an injunction to restrain the district and its officers and directors from entering into a certain agreement with other irrigation districts, public agencies, and municipal corporations of California for an apportionment among themselves of water rights in the Colorado river system. The contemplated allocation contract is an important part of the program of construction under the Boulder Canyon Project Act (45 Stat. 1057 [43 USCA §§ 617–617t]) of a canal entirely within the United States, whereby water will be diverted from the Colorado river for public and beneficial uses by the respective public bodies in California that are parties to the proposed contract. These parties are, respectively, Palo Verdes Irrigation District, Imperial Irrigation District, Coachella Valley Water District, Metropolitan Water District of Southern California, City of Los Angeles, City of San Diego, and County of San Diego. None of said proposed contracting parties except the Imperial Irrigation District are made parties to this suit. Plaintiffs are residents and citizens of the states of Indiana and Illinois, respectively, and they invoke the jurisdiction of the federal court in this matter solely because of diversity of citizenship with the defendants. The amount in controversy is a property right exceeding in value $3,000.

The Imperial Irrigation District, which for brevity will be hereafter referred to as the district, has appeared pursuant to an order to show cause and temporary restraining order that was issued ex parte on the application of plaintiffs at the time the complaint was filed by them. The district asks for a discharge of the order. It has also filed a motion to dismiss the bill of complaint herein. The plaintiffs ask the court to continue the restraining order heretofore issued and to enlarge it pendente lite by granting a temporary injunction, not only to restrain the district from entering into the proposed agreement with the other parties, but also to forbid the district from pursuing under the proposed contract any further activity during the pendency of this suit directed to the accomplishment of a plan required by

the Secretary of the Interior to bring governmental aid to the several public agencies that are parties to the proposed agreement for the construction of the so-called all-American canal. There are several grounds stated in the motion to dismiss and all of them have been argued and are urged by the district as sufficient reasons for the dismissal of this suit. They have all been carefully considered by the court. There will be discussed in this memorandum, however, only the main ground of the motion to dismiss, namely that the bill of complaint does not state facts sufficient to constitute a cause of action against the defendants, and that said bill of complaint does not state facts justifying any relief in equity to complainants.

■ The bill substantially alleges that defendants have passed a resolution authorizing the execution of the allocation contract and that, unless enjoined, they will enter into the agreement that will have the effect of diminishing and relinquishing the vested water rights of complainants which they, as landowners within the district, now enjoy through priorities and appropriations on the Colorado river. It is claimed that, if said contract is made by the respective public bodies, the two landowners will sustain immediate and irreparable injury to their property and water rights. They assert that they have no plain, speedy and adequate remedy at law that will operate to prevent the injury that is threatened by the defendants. An analysis and consideration of the allegations of the complaint, aided by facts which this court judicially knows, and which it has the right to consider in determining the sufficiency of the complaint under the decision of the United States Supreme Court in Arizona v. California, 283 U. S. 423, 51 S. Ct. 522, 75 L. Ed. 1154, fails to sustain plaintiffs' contentions.

■ The gist of this suit, as well as the threatened injury that plaintiffs seek to restrain by it, is not the allocation contract per se, but the consequent inclusion of additional and more irrigable land within the Imperial Irrigation District than lies therein at present. The making of the proposed allocation contract ex proprio vigore can have no such effect. It will be necessary for the district to do something more than merely execute the proposed agreement with the various bodies before plaintiffs' water rights are jeopardized so as to justify this court in issuing any injunction against the defendants. There can be no doubt that all parties to the agreement contemplate an enlargement of the district and the intended contract expressly states that other California lands are to be taken in and are to participate in the benefits that are expected to inure to an enlarged and unified all-American water district. But the contract standing alone cannot possibly bring such other lands into the district. They can be brought in only by further proceedings under the laws of California, and until there is a legal and effective inclusion of additional lands that will share in the enjoyment of the water rights of the Imperial Irrigation District with the complainants neither of them has been damaged in any way.

■ It has long been established that the absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a particular case must depend altogether upon the character of the case as disclosed in the pleadings. The complaint in this case discloses no existing or threatened injury to the lands or water rights of plaintiffs that is not adequately remediable without the interposition of a court of equity at this time. The Imperial Irrigation District was created, organized, and functions under the California Irrigation District Act (Stat. 1897, p. 254) and California laws supplementary and amendatory thereto. These statutes constitute the structure of the district and are the sole measure of its powers and that of its officers and directors, and nothing is found in these laws or in the proper construction of them that prevents the district from entering into the proposed agreement. Considering briefly the claim that the district has no legal right to make the allocation contract, we know judicially, by reference to an act of the California Legislature approved January 21, 1915 (Stat. 1915, p. 1), that the Imperial Valley and its population of over 30,000 people has been in serious danger of loss of life and a vast amount of property damage by reason of threatened overflow of the Colorado river, and that, by reason thereof, the Irrigation Act of 1897 was amended so as to expressly authorize the board of directors of the district to expend such sum as they deemed necessary for the protection of the lands within the district from damage by floods and from overflow of the Colorado river, and, moreover, we know from notorious historical facts that the flood menace and insufficiency of water for irrigation purposes has been, and is now, a serious obstacle to the development and

prosperity of the lands within the district and of the people who reside therein. We further know judicially that a chief purpose of the Colorado river and Boulder Canyon project is the reformation of these destructive conditions by the construction of the Hoover Dam at Black Canyon, and the all-American canal with storage facilities correlative thereto. These engineering feats will be of public benefit. Judicial knowledge should be utilized by the court as an aid to the proper interpretation of the bill of complaint and as to the sufficiency of its allegations of fact. See Jackson v. United States, 230 U. S. 18, 33 S. Ct. 1011, 57 L. Ed. 1363, and Gray v. Reclamation District, 174 Cal. 624, 163 P. 1024. The efforts of the various public bodies that are parties to the proposed allocation contract to harmonize and adjust their respective claims to water from the Colorado river have been so lengthy and continuous that it is a well-known and generally established fact that the proposed allocation agreement is a compromise of such conflicting claims in order that the district, as well as the other public bodies affected, may meet the requirements of the Secretary of the Interior and thereby hasten the completion of an all-American canal. It is clear that a contract that in the sound judgment and discretion of the board of directors of the district accomplishes such benefit is not ultra vires, but is within the lawful exercise of the powers of said board of directors.

It would extend this memorandum unnecessarily to quote the various sections of applicable statutes that establish the required procedure for the inclusion of lands by irrigation districts, and it is sufficient to say that sections 85 to 97, inclusive, of the California Irrigation Act as amended (Deering's General Laws of California 1923, and Supps. Act 3854, Laws 1931, p. 2206) establish the exclusive and complete plan and procedure for the inclusion of additional lands within irrigation districts of California.

It is among other matters provided that before such lands can be taken into an existing irrigation district, petitions therefor must be filed by landowners seeking inclusion, notices of hearings must be given to all interested parties, hearings must be had by the directors of the district, opportunities for protest to inclusion must be afforded to all those affected, consideration and decision by the board of directors as to the best interests of the district must be given, and in the event of protest against the inclusion of additional lands filed by not less than 3 per cent. of holders of title or evidence of title of lands within the existing district and holding the title or evidence of title to not less than 3 per cent. in value of the lands within the existing district, or if, upon a hearing after notice to those interested in the inclusion proceedings, the board of directors of the district deem it not for the best interests of the district to include therein the lands described in the petition for inclusion or any of them, the board shall adopt a resolution reciting such facts and describing the boundary of the tract of land proposed to be included in the district and thereafter shall call an election wherein all of the qualified electors of the existing irrigation district shall have the right to vote either to include or exclude the additional lands from the district. If a majority of the votes are against inclusion, there is no possibility of such inclusion, and therefore no possibility of any injury to complainants herein or to their lands. The bill shows that none of the proceedings contemplated and required by the irrigation acts of California have been taken by the district other than the passing of a resolution wherein the entering into the allocation agreement with the other said public agencies that are parties to it is authorized. It thus clearly appears that there is a complete and efficient remedy available to the complainants for the protection of their property rights, which they have made no effort to pursue, and under these circumstances, they should not be permitted to invoke at this time the aid of a court of equity. They should be relegated to their available legal processes under the laws of California. In San Joaquin Irrigation Co. v. Stanislaus, 155 Cal. 21, 99 P. 365, the California Supreme Court, in considering a similar situation to the one in suit, said: "It is the general rule that a party must exhaust all his legal remedies before he is entitled to redress in a Court of equity. While this rule has application to legal remedies enforceable in an action at law, we perceive no good reason why the general principle may not be extended so as to require parties who are afforded by statute an opportunity to obtain adequate relief by application to a legislative or administrative municipal body, like a board of supervisors, with reference to the very matter of which they complain in an action in equity, to seek that relief from such body before being permitted to maintain an equitable action for the purpose."

Moreover, it must be presumed that the officers and directors of the district will not act arbitrarily or unreasonably, and that in proceedings for the inclusion of additional lands they will be guided by sound discretion and a conscientious and intelligent judgment as to whether the best interests of the district will be served by including therein such land, and a suitor is in no position to seek the aid of equity until he has made an effort to dissuade the officers and directors of the irrigation district from the inclusion of additional lands into the district. The appeal to equity by these plaintiffs is therefore premature under the allegations of the complaint. There is a further reason why the plaintiffs have no standing in a court of equity at this time. The bill does not allege that the directors of the district have acted or are about to act fraudulently or corruptly and if, in furtherance of the proposed allocation agreement, they inaugurate proceedings for the inclusion of lands that will injuriously and irreparably affect the vested property rights of complainants, such action may be reviewed by judicial proceedings of a civil nature authorized by the Code of Civil Procedure of California, § 1067 et seq. In discussing an analogous matter, the California Supreme Court, in South Pasadena v. Pasadena Land, etc., Co., 152 Cal. 587, 93 P. 490, said: "The contention that no remedy exists to compel performance by the successor in interest, is without force. In case of the establishment of a water system of this character, all the persons to whose use the water is appropriated or dedicated are vested with a right to have the supply continued by whomsoever may be in control thereof (citing cases). If the water is supplied for use upon land for its benefit as for irrigation, it becomes in the nature of an appurtenance to the land. If it is supplied for personal use to all persons within a certain territory or to all of a certain class within the territory, the right to its use is personal to the inhabitants of the territory, or to the members of the class, as the case may be, so long as they remain such. In either case the right may be enforced against the person in control of the supply and the works by which it is distributed, regardless of the title, by means of an action in mandamus to compel the continuance of the distribution, in the usual and proper manner, to those entitled. (Citing cases.)"

In conclusion, it is held that the execution of the allocation contract by the district is not ultra vires or beyond the power of the directors of the district, and that

complainants have shown no existing or threatened injury and damage by reason of the allocation contract that is not remediable by available legal provisions under the laws of California.

It is accordingly ordered that the temporary restraining order heretofore issued herein ex parte be vacated and discharged; that an interlocutory injunction herein be denied, and that the bill of complaint herein and this suit be dismissed, with costs to the defendants.